Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
Jamie Serb (289601)
jamie@crosnerlegal.com
Chad Saunders (SBN 257810)
chad@crosnerlegal.com
**CROSNER LEGAL, PC**
9440 Santa Monica Blvd., Ste. 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429

Attorneys for Plaintiff Lori Johnson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI JOHNSON, on behalf of herself and others similarly situated,<br><br>            Plaintiff,<br><br>  vs.<br><br>INSULET CORPORATION, a Delaware    corporation; and DOES 1 through 100, inclusive.<br><br>            Defendants. | Case No.:  2:20-cv-05418-VAP-KES<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT**<br><br>Date:  May 8, 2023<br>Time: 2:00 p.m.<br>Ctrm: 6A, 6th Floor<br><br>Hon. Virginia A. Phillips |

## <u>NOTICE OF MOTION</u>

1    PLEASE TAKE NOTICE that on May 8, 2023 in Courtroom 6A, 6th Floor,

2    of the above-captioned Court, located at 350 W. First St., Los Angeles, California,

3    the Hon. Virginia A. Phillips presiding, plaintiff Lori Johnson will move the Court

4    for approval of a proposed Fair Labor Standards Act collective action settlement of

5    the above-captioned action under 29 U.S.C. section 216(b).  The terms of the

6    settlement are contained within the Settlement Agreement, filed concurrently

7    herewith as Exhibit 1 to the Declaration of Zachary M. Crosner. Plaintiff requests

8    that the Court approve the proposed settlement in all particulars, approve the form

9    of class notice and claim form attached as Exhibits B and C to the Settlement

10   Agreement, and enter the proposed order attached as Exhibit D to the Settlement

11   Agreement.

12       This motion will be based on this Notice, the attached Memorandum of Points

13   and Authorities, the Settlement Agreement, the Declaration of Zachary M. Crosner,

14   the Court's entire file herein, and on such further evidence and argument as may be

15   presented at the hearing.

16   Dated: March 23, 2023,                CROSNER LEGAL, P.C.

17

18

19                                          ZACHARY M. CROSNER

20                                          Attorneys for Plaintiff LORI JOHNSON

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR APPROVAL
CASE NO. 2:20-cv-05418-VAP

# **TABLES OF CONTENTS**

I.   INTRODUCTION………………………………………………………………..1

II.  STATEMENT OF FACTS………………………………………………………1

III. PROPOSED SETTLEMENT TERMS……………………………………………...3

IV.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT……………..4

      A. Standard for Approval ……………………………………………………...5

      B. There is a Bona Fide Dispute Between the Parties……………………………5

      C. The Proposed Settlement is Fair and Reasonable ………………………………6

          1. Range of Possible Recovery………………………………………………6

          2. Stage of the Proceedings and Amount of Discovery………………………...7

          3. Litigation Risks faced by the Parties………………………………………8

          4. Releases ………………………………………………………………10

          5. Experience and Views of Counsel…………………………………………10

          6. Fraud or Collusion…………………………………………………………11

V.  The Court Should Award the Requested Attorney's Fees and Costs………………..15

VI. CONCLUSION…………………………………………………………………15

NOTICE OF MOTION AND MOTION FOR APPROVAL
CASE NO. 2:20-cv-05418-VAP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Alyeska Pipeline Service Co. v. Wilderness Society,*
   421 U.S. 240 257-58 (1975) ................................................................. 12

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (N.D. Cal. 2015) .......................................................... 9

*In re Bluetooth Headset Prod. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ........................................................... 11, 12

*Boeing Co. v. Van Gemert,*
   444 U.S. 473,478 (1980) .................................................................... 12

*In re: Businessland Sec. Litig.,*
   1991 U.S. Dist. Lexis 8962 (N.D. Cal. June 18, 1991) ...................... 14

*Camden I Condominium Ass'n, Inc. v. Dunkle,*
   946 F.2d 768 (11th Cir. 1991) ............................................................. 13

*Christopher v. SmithKline Beecham Corp.,*
   567 US 142 (2012) ................................................................................ 8

*Conte & Newberg, Newberg on Class Actions,*
   § 14.6 (4th ed. 2007) .......................................................................... 13

*Cordy v. USS-Posco Indus.,*
   No. 12-CV-00553 JST, 2013 WL 4028627 (N.D. Cal. Aug. 1, 2013) ............. 10

*Franklin v. Kaypro Corp.,*
   884 F.2d 1222 (9th Cir. 1989) .............................................................. 4

*Freixa v. Prestige Cruise Services, LLC,*
   853 F.3d 1344 (11th Cir. 2017) ............................................................ 8

*Glass v. UBS Fin. Servs., Inc.,*
   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
   <u>aff'd</u>, 331 F. App'x 452 (9th Cir. 2009) ............................................. 7

*Gonzalez v. Fallanghina, LLC,*
   2017 WL. 1374582 (N.D. Cal. April 17, 2017) ..................................... 5

ii

*Harris v. Marhoefer,*
   24 F.3d 16 (9th Cir. 1994) ................................................................. 14

*Haworth v. Nevada,*
   56 F.3d 1048 (9th Cir. 1995) ............................................................. 12

*Jarrett v. ERC Properties, Inc.,*
   211 F.3d 1078 (8th Cir. 2000) ............................................................. 9

*Jones v. Nuclear Pharm., Inc.,*
   741 F.2d 322 (10th Cir. 1984) ............................................................. 5

*Larsen v. Trader Joe's Co.,*
   2014 WL 3404531 (N.D.Cal. Jul. 11, 2014) ..................................... 11

*Lynn's Food Stores, Inc. v. United States,*
   679 F.2d 1350 (11th Cir. 1982) ........................................................... 5

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ............................................................... 6

*Mills v. Auto-Lite Co.,*
   396 U.S. 375 (1970) .......................................................................... 12

*Monterrubio v. Best Buy Stores, L.P.,*
   291 F.R.D. 443 (E.D. Cal. 2013) ......................................................... 7

*Nen Thio v. Genji, LLC,*
   14 F.Supp.3d 1324 (N.D. Cal. 2014) ................................................... 5

*Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.,*
   688 F.2d 615 (9th Cir. 1982) ............................................................... 6

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989) ....................................................... 12, 13

*Satchell v. Fed Ex. Corp.,*
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................... 11

*Selk v. Pioneers Mem'l Healthcare Dist.,*
   159 F.Supp.3d 1164 (S.D. Cal. 2016) ................................................. 6

*Seminiano v. Xyris Enter., Inc.,*
   602 F.App'x 682 (9th Cir. 2015) ......................................................... 5

iii

*Shaw v. Toshiba America Information Systems, Inc.,*
  91 F.Supp.2d 942 (E.D. Tex. 2000) ................................................................. 13

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ........................................................................ 13

*Slezak v. City of Palo Alto,*
  2017 WL 2688224 (N.D. Cal. June 22, 2017) ................................................. 5

*Sprague v. Ticonic Nat'l Bank,*
  307 U.S. 161 (1939) ...................................................................................... 13

*In re Tableware Antitrust Litig.,*
  484 F.Supp.2d 1078 (N.D. Cal. 2007) ............................................................ 6

*Van Vranken v. Atlantic Richfield Co.,*
  901 F.Supp. 294 (N.D. Cal. 1995) ............................................................ 13, 14

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ................................................................. 12, 14

*Wren v. RGIS Inventory Specialists,*
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................. 14

**Statutes**

29 U.S.C. § 207(a) ................................................................................................. 8

29 U.S.C. section 216(b) ................................................................................. *passim*

FAIR LABOR STANDARDS ACT ............................................................... 0, 1, 1

**Other Authorities**

29 C.F.R. § 778.118 .............................................................................................. 8

29 C.F.R. § 778.119 .............................................................................................. 8

Federal Rule of Civil Procedure 23 ...................................................................... 1

Rule 16 ................................................................................................................. 2

iv

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Lori Johnson moves for approval of the proposed opt in Fair Labor Standards Act collective action settlement between herself and Defendant Insulet Corporation ("Insulet" or "Defendant"). The terms of the proposed settlement are set forth in the Parties' Settlement Agreement, Exhibit 1 to the Crosner Declaration filed herewith, and are fair, reasonable and adequate and meet all standards for approval under 29 U.S.C. section 216(b).

The proposed settlement will resolve bona fide disputes over payment of overtime wages under the FLSA, as well state wage and hour statutes. Upon approval, the settlement will provide for notice to the Class Members within 30 days of approval, and Class Members then will have 60 days to join the settlement by executing and returning the proposed Claim Form, Exhibit C to the Settlement Agreement. Since the proposed settlement is an opt-in collective action settlement rather than an opt out class action settlement under Federal Rule of Civil Procedure 23, no fairness hearing is required or requested by the Parties and no absent class member will be bound to the settlement's terms absent their express agreement (by way of opting in to the settlement).

The proposed settlement is the result of extensive formal and informal discovery and adversarial, arms-length negotiations between experienced counsel, facilitated by a well-respected mediator. If approved, the settlement will make settlement payments available to all Class Members who choose to participate in the settlement. Those who do not participate will not be included or release any claims.

Accordingly, Plaintiff respectfully requests that the Court grant this motion, approve the proposed settlement in all particulars, and approve and authorize the mailing of the proposed notice form and claim form to Class Members.

## II.    STATEMENT OF FACTS

On March 30, 2020 Plaintiff filed her initial complaint in the Los Angeles County Superior Court, and Defendant then removed the case to this Court on June 20, 2020. [Docket No. 1.] Plaintiff alleges Insulet failed to pay her and other similarly situated employees all overtime wages in violation of the FLSA and state law. More specifically, Plaintiff alleges she and the other similarly situated employees received commission wages that Insulet failed to include in the their "regular rate of pay" for purposes of calculating the premium rate owed for overtime work. As a result, Plaintiff alleges Insulet underpaid Plaintiff and other similarly situated employees for their overtime wages. The operative complaint seeks recovery of unpaid overtime, liquidated damages, interest, and attorney's fees and costs.

Defendant has at all times denied the complaint's allegations, and contends it properly calculated and paid all overtime wages due to Plaintiff and any other similarly situated employees under both state and federal law. Defendant contends further it made reasonable efforts to comply with applicable federal and state wage and hour laws and, accordingly, its conduct was not "willful" such that it could potentially be liable for liquidated damages or an extended three-year statute of limitations.

After removal, the Parties subsequently exchanged initial disclosures, participated in a Rule 16 conference with the Court, and propounded and responded to extensive written discovery followed by lengthy meet and confer discussions regarding same. Ultimately, the Parties agreed to mediate and also agreed on a protocol for exchanging additional documents and information beforehand. Accordingly, both formally and informally, Defendant produced time and pay records for a subset of the Class Members, and produced various documents reflecting its wage and hour policies and practices during the relevant time period, exemplars of applicable wage statements, employee handbooks, as well as information on the

NOTICE OF MOTION AND MOTION FOR APPROVAL
CASE NO. 2:20-cv-05418-VAP

1    number of putative Class Members, the number of work weeks and pay periods,

2    commissions earned, average hourly rates of pay, etc.

3         Plaintiff's counsel also retained a consulting expert, Berger Consulting

4    Group, to analyze the payroll data informally produced by Defendant in preparation

5    for the mediation.   After reviewing Defendant's wage and hour policies and

6    practices, and analyzing Defendant's time and pay records with the consulting

7    expert's asssistance, Plaintiff's counsel was able to evaluate a maximum monetary

8    exposure for all claims, and prepare a damage analysis prior to mediation.  Plaintiff's

9    counsel also investigated the applicable law regarding the claims and defenses

10   asserted in the litigation.  Thus, Plaintiff and her counsel are familiar with the facts

11   and the legal issues raised by the pleadings and were able to act intelligently in

12   negotiating the settlement.

13        On December 9, 2020, the Parties participated in a private mediation with a

14   highly-regarded professional neutral, the Hon. Dana Sabraw (Ret.).  The settlement

15   negotiations were at arm's length and, although conducted in a professional manner,

16   were adversarial.  The Parties went into mediation willing to explore the potential

17   for a settlement of the disputed claims, but each side was also prepared to litigate

18   their position through trial and appeal if a settlement had not been reached. After

19   extensive negotiations and discussions regarding the claims and defenses in this

20   action, as well as the risks involved in further litigation, the Parties reached a

21   tentative agreement, the material terms of which are encompassed within the

22   Settlement Agreement now before the Court for approval.

23   **III.    PROPOSED SETTLEMENT TERMS.**

24        If approved, the proposed settlement will cover Plaintiff and all Class Members

25   who elect to complete, sign, and return a Claim Form.   The settlement includes

26   approximately 258 Class Members.

27        In total, Defendant will fund a settlement in the amount of $112,500 (the

28   "Maximum Gross Settlement Amount").  The Maximum Gross Settlement Amount is

inclusive of all payments contemplated under the Settlement and accounts for: (1) all Settlement Awards to the Settlement Class Members; (2) the Plaintiff's Service Payment Allocation; (3) Administrative Costs; (4) the Attorney Expenses Payment for reimbursement of litigation costs; and (5) the Attorney's Fee Payment.

From the Maximum Gross Settlement Amount, Plaintiff currently estimates at $62,748.39 will comprise the Class Settlement Amount available for distribution to the Class Members who opt in to the settlement. Each participating Class Member's payment will be calculated proportionally based on each individual's alleged overtime damages during the Class Period.

From the Maximum Gross Settlement Amount, Plaintiff requests that $5,000 be paid to Class Representive Lori Johnson as the Service Payment Allocation, in addition to her individual settlement allocation, for her services as the named plaintiff and Class Representative.  In addition, Class Counsel requests approval of the Attorney's Fees Payment in the amount of $28,125.00, or 25% of the Total Maximum Settlement Amount, and the Attorney's Expenses Payment in the amount of $10,626.61. Finally, up to $6,000 from the Total Maximum Settlement Amount is allocated to Administistative Costs payable to the third-party settlement administrator.

In exchange, the case will be dismissed and the participating Class Members will release Defendant from all federal and state wage and hour claims alleged – or that could have been reasonably alleged based on the facts – in the operative complaint, including claims for unpaid wages and overtime, liquidated damags, interest, attorney's fees and litigation costs, under the FLSA and corresponding California state wage and hour laws.

To provide notice of the proposed settlement to the Class Members, the Parties submit herewith the proposed Class Notice and proposed Claim Form, Exhibits B and C to the Settlement Agreement. Both forms will be mailed to the Class Members at their last known home address as reflected in Insulet's accessible electronic records, and after being updated by the Settlement Administrator.  Class Members who sign

and timely return a Claim Form will participate in the settlement, receive a settlement payment, and release their claims against Defendant.

## IV.  THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT

### A.  Standard for Approval

The policy of the federal courts is to encourage settlement before trial.  Franklin v. Kaypro Corp., 884 F.2d 1222, 1225 (9th Cir. 1989).  "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."  Id.

Federal district courts in California and the Ninth Circuit have followed the Eleventh Circuit's holding that FLSA collective action settlements require the supervision of either the Secretary of Labor or a district court.  Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982); Seminiano v. Xyris Enter., Inc., 602 F.App'x 682, 683 (9th Cir. 2015); Slezak v. City of Palo Alto, 2017 WL 2688224 (N.D. Cal. June 22, 2017).  Similarly, although Ninth Circuit has not established the criteria a district court should consider in determining whether an FLSA collective action settlement agreement warrants approval, most courts again evaluate the settlement under the standard established in Lynn's Food Stores, which requires the settlement constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  679 F.2d at 1355.  In exercising its discretion, a trial court must approve a settlement if it is fair, reasonable, and adequate.  Jones v. Nuclear Pharm., Inc., 741 F.2d 322, 324 (10th Cir. 1984).

As shown below, the proposed settlement satisfies each of these criteria and should be approved.

### B.  There is a Bona Fide Dispute Between the Parties

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that

1  are actually in dispute, the district court may approve the settlement in order to

2  promote the policy of encouraging settlement of litigation."  Nen Thio v. Genji, LLC,

3  14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014).  "The purpose of this analysis is to ensure

4  that an employee does not waive claims for wages, overtime compensation, or

5  liquidated damages when no actual dispute exists between the parties."  Slezak, 2017

6  WL 2688224, at *2.  If there are "legitimate questions about the existence and extent

7  of [Defendants'] FLSA liability," a bona fide dispute exists.  Gonzalez v. Fallanghina,

8  LLC, 2017 WL. 1374582, at *2 (N.D. Cal. April 17, 2017).

9       Here, there are several legitimate quesions regarding Defendant's alleged

10  FLSA liability for failure to pay overtime wages, as well as the amounts potentially

11  due.  These include whether certain payments should have been included in the

12  regular rate calculation, whether any violation was "willful" within the meaning of

13  the FLSA such that the Class Members were entitled to liquidated damages and the

14  three-year statute of limitations, the correct calculation of the "regular rate" for

15  Plaintiff and the Class Members, and application of any offsets against the damages

16  for "true up" payments made by Insulet and the fact that it began paying an "FLSA

17  Overtime" premium in and around January 2020.  Each of these issues would

18  significantly impact both Plaintiff's and the Class Members' entitlement to damages

19  as well as the proper amount of any damages.  For instance, if Insulet's conduct was

20  not "willful," then Plaintiff and the Class Members would not be able to recover

21  liquidated damages and also would only be allowed to rely on a two-year statute of

22  limitiations.  29 U.S.C. § 216(b).  Thus, there are legitimate questions as to the

23  "existence and extent" of Insulet's FLSA liability, and the matter presents a bona fide

24  dispute appropriate for settlement.

25       **C.    The Proposed Settlement is Fair and Reasonable**

26       To determine whether the settlement is fair and reasonable, the Court looks to

27  the "totality of the circumstances" and the "purposes of FLSA."  Selk v. Pioneers

28  Mem'l Healthcare Dist., 159 F.Supp.3d 1164, 1173 (S.D. Cal. 2016).  The Selk court

identified the following factors to be considered: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. Id. The proposed settlement meets each of these factors.

### 1.    Range of Possible Recovery

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007).  But "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  Officers for Justice v. Civil Serv. Comm'n of City & County of S.F., 688 F.2d 615, 628 (9th Cir. 1982); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (same).

Here, the Parties have agreed to settle the action for a Maximum Gross Settlement Amount of $112,500, which amount is a reasonable compromise as compared to the maximum theoretical liability.  Using the pre-mediation formal and informal production of payroll data, time data, and various documents evidencing Defendant's wage and hour policies and procedures, and with their expert consultant's assistance, Plaintiff and counsel estimated the possible damages based the primary theory of liability at approximately $309,806 on the Class Members' claims.

This estimate assumes that Insulet violated the law and that these violations were willful (neither of which has been found in this case to date), and includes approximately $154,903 in underpaid overtime based on Defendant's alleged failure to include commissions in the regular rate over the three year statute of limitations, plus an additional $154,903 in liquidated damages, for a total of $309,806.  Federal courts in California regularly approve wage and hour settlements in line with the amount to be paid here.  See, e.g., Monterrubio v. Best Buy Stores, L.P., 291 F.R.D.

443, 454 (E.D. Cal. 2013) (approving settlement representing "30% of Plaintiff's maximum damages analysis"); <u>Jones v. Agilysys, Inc.</u>, 2104 WL 2090034 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members); <u>Glass v. UBS Fin. Servs., Inc.</u>, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving settlement constituting approximately "25 to 35% of the amount of damages plaintiffs could have hoped to prove at trial"), <u>aff'd</u>, 331 F. App'x 452 (9th Cir. 2009).  By way of comparison, if Plaintff cannot establish willful violations (but establishes Insulet violated the law), the estimated amount of unpaid overtime is only about $103,000 (based on a two year statute of limitations).  Finally, none of these calculations apply any risk adjustment to Plaintiff's claims to account for Defendant's factual and legal defenses - of which there are many, as discussed below.

### 2.    Stage of the Proceedings and Amount of Discovery

Prior to reaching this settlement, Plaintiff's counsel conducted both formal and informal discovery and investigation into the claims alleged by Plaintiff, including, among other things, reviewing and analyzing handbooks and other policy documents, reviewing and analyzing time and payroll data produced by Defendant, and preparing a damages analysis with the assistance of a retained expert.  Plaintiff's counsel's calculations are based on data from Defendant including class size (total current and former employees), pay period data, average hourly rate of pay, commission records, time records, pay records, and policy documents.  In addition, Plaintiff's counsel has investigated the applicable law regarding the claims and defenses to the claims asserted in the litigation.  Thus, Plaintiff and her counsel were able to act intelligently and effectively in negotiating the proposed Settlement.

### 3.    Litigation Risks faced by the Parties

Based on their investigation, discovery and analysis, Plaintiff and her counsel evaluated the strengths and weaknesses of her claims, as well as Insulet's defenses.

The underlying claims primarily arise from Insulet's alleged failure to pay its commissioned employees correct overtime rates in compliance with the FLSA. Under the FLSA, employers must pay employees overtime for all hours worked in excess of forty hours per week at one and a half times the employee's "regular rate" of pay, where the "regular rate" includes "all remuneration for employment" paid to or on behalf of the employee, including commissions. 29 U.S.C. § 207(a); Christopher v. SmithKline Beecham Corp., 567 US 142, 147 (2012).

Under the FLSA, sales commissions are payments for hours worked and are included in the regular rate. A commission paid on a weekly basis is added to the employee's other earnings for that workweek and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. 29 C.F.R. § 778.118. Where commissions are deferred (for instance, paid quarterly), the employer must pay additional overtime apportioned back to the hours worked during the workweeks when the commissioned was earned. 29 C.F.R. § 778.119; Freixa v. Prestige Cruise Services, LLC, 853 F.3d 1344, 1346-48 (11th Cir. 2017).

Finally, where an employee establishes a "willful" failure to pay overtime, an employer will be liable for a period of three years from the filing of the complaint as well as for liquidated damages up to double the amount due. 29 U.S.C. § 216(b). Unless the employer proves that it acted in good faith and had reasonable grounds to believe that the conduct did not violate the FLSA, liquidated damages should be awarded. Jarrett v. ERC Properties, Inc., 211 F.3d 1078, 1083 (8th Cir. 2000).

Here, Plaintiff alleges Insulet did not pay her and the Class Members at the correct overtime rate because it failed to include their sales commissions in the "regular rate" of pay and consequently underpaid for overtime hours. In response, Insulet argued its compensation and payroll policies complied with the FLSA and state law and that it properly calculated and paid for overtime wages. The Parties dispute how changes made by Insulet and the inclusion of an "FLSA Overtime" line

item in wage statements, starting in January 2020, as well as issuance of "true up" payments to account for potential discrepancies in the regular rate computation impact Insulet's liability.  Proving any violation was "willful" within the meaning of the FLSA such that the Class Members were entitled to liquidated damages and the three-year statute of limitations likewise may prove difficult, as Insulet argued forcefully it acted in good faith and reasonably believed it complied with the law and promptly made "true up" payments to offset any perceived miscalulations.  This factor thus favors approving the settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all."  <u>Bellinghausen v. Tractor Supply Co.,</u> 306 F.R.D. 245, 255 (N.D. Cal. 2015).

Plaintiff and her counsel strongly believe their lawsuit is maintainable as a collective action. However, there always are risks associated with certifying a collective action, and the settlement obviates the significant risk that this Court may deny certification of Plaintiff's claims. Even if Plaintiff obtained certification, continued litigation would be expensive, involving a trial and possible appeals, and would substantially delay any recovery by the Settlement Class Members.  While Plaintiff is confident in the merits of her claims, legitimate controversies exist as to her claims and Defendant has multiple potential defenses to both certification and on the merits.  Plaintiff also recognizes that proving the amount of wages and penalties due to each Class Member would be a lengthy, expensive, and uncertain task.

Plaintiff and her counsel discounted the value of the class claims consistent with these risks and carefully weighed the likelihood of the class receiving substantially greater benefit if the litigation continued.  Plaintiff and her counsel concluded – in light of the very real risks discussed above – settlement on the proposed terms, without further prolonged and costly litigation, was in the best interests of the class.  Further, settlement of this matter will conserve the resources of both the Court and the parties, and as a result Plaintiff submits this factor weighs heavily in favor of approval.

10

1   In light of the many and significant obstacles Plaintiff faces in pursuing her

2   claims, Plaintiff submits the overall size of the recovery is fair.  Further, the

3   significant individual settlement awards and the fact that the settlement is entirely in

4   line with other settlements involving similar claims both support a finding the

5   proposed settlement is fair, adequate, and reasonable, as noted above.  Importantly

6   as well, "a cash settlement amounting to only a fraction of the potential recovery

7   does not per se render the settlement inadequate or unfair."  <u>Cordy v. USS-Posco</u>

8   <u>Indus.</u>, No. 12-CV-00553 JST, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013)

9   <u>quoting</u> <u>In re Mego Fin. Corp.</u>, 213 F.3d at 459.  Given the risks to both sides, the

10  Settlement is a fair and reasonable compromise.  Accordingly, this factor weighs in

11  favor of approval as well.

## 4.    Releases

13  The proposed Releases contained in the Settlement Agreement are

14  appropriately narrow in scope and only release claims associated with the specific

15  factual allegations made in or that could have reasonably been asserted in Plaintiff's

16  First Amended Complaint.  Plaintiffs and every Class Member shall, pursuant to the

17  Settlement, be bound by the release of claims as set forth in the Settlement, which

18  release here does not go beyond the claims at issue (or that could have been reasonably

19  asserted) in the instant suit. If a Class Member does not affirmatively opt in, then he

20  or she will not release any claims against Insulet.

## 5.    Experience and Views of Counsel

22  In determining whether a settlement is fair and reasonable, "[t]he opinions of

23  counsel should be given considerable weight both because of counsel's familiarity

24  with th[e] litigation and previous experience with cases." <u>Larsen v. Trader Joe's Co.</u>,

25  2014 WL 3404531, at *5 (N.D.Cal. Jul. 11, 2014).  Here, the class is represented by

26  experienced counsel, as Plaintiff's counsel has extensive experience in wage and hour

27  class actions and are well-qualified to evaluate the merits of Plaintiff's claims and the

28  proposed settlement.  [Crosner Decl., ¶¶ 4, 10.]

Based on this combined experience, and after factoring in the risks articulated above, Plaintiff's counsel are confident the proposed settlement accords with the prevailing sense of "fair, adequate, and reasonable" in the class action context. To date, no putative Class Member other than Plaintiff has signed off the proposed settlement, nor has any putative Class Member expressed any opposition to the settlement.

### 6.    Fraud or Collusion

As discussed above, the settlement is the product of adversarial, non-collusive, and arm's-length bargaining between experienced counsel, facilitated by a well-respected mediator. The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. Satchell v. Fed Ex. Corp., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Further, there is nothing on the face of the record that shows that Plaintiff's counsel "allowed pursuit of their own self-interests and that of certain class members to infect the negotiation," and Plaintiff's counsel further are requesting a reasonable fee entirely in line the Ninth Circuit benchmark fee and accordingly are not receiving a "disproportionate" share of the settlement. In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

## V.    The Court Should Award the Requested Attorney's Fees and Costs

The FLSA mandates an award of attorney's fees when settling a collective action. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant."). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes." Haworth v. Nevada, 56 F.3d 1048, 1051 (9th Cir. 1995).

In the Ninth Circuit, a district court has discretion to choose either the percentage-of-the-fund or the lodestar method to determine what constitutes a reasonable fee. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

As is the case here, "[w]here a settlement produces a common fund for the benefit of the entire class," courts may employ the percentage-of-recovery method, with twenty-five percent of the fund as the Ninth Circuit's benchmark for a reasonable fee award, although this may be adjusted to account for special circumstances.  In re Bluetooth Headset, 654 F.3d at 941-42.  Ultimately, the district court must exercise its discretion to reach a reasonable result.  Id. at 942.

The U.S. Supreme Court has consistently recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himslelf or his client is entitled to a reasonable attorneys fee from the fund as a whole."  Boeing Co. v. Van Gemert, 444 U.S. 473,478 (1980); Mills v. Auto-Lite Co., 396 U.S. 375, 392-93 (1970).  The common fund doctrine is a well-recognized exception to the American Rule that a litigant must bear its own attorneys fees.  Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 257-58 (1975).  The Ninth Circuit holds the common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those who are benefitting.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989).  These criteria are "easily met" when "each member of a certified class has an undisputed and mathematically ascertainable claim to a part of a lump-sum [settlement] recovered on his behalf."  Id. at 271, citing Van Gemert, 444 U.S. at 479.

Under the three factors set forth in Paul, Johnson, the common fund doctrine applies in this matter.  First, the class of beneficiaries is identifiable.  Insulet has identified each of the settlement class members by reviewing its employment records.  Second, the benefits are easily traceable, as they consist entirely of monetary payments directly to the affected employees.  Further, each class member has an "undisputed and mathematically ascertainable claim" to a share of the settlement based on the number of weeks during the class period he or she worked for Insulet in a position paid in whole or in part by commissions.  Third, the fee can be shifted with

1  exactitude since Class Counsel claims a specific, lump-sum percentage of the Total

2  Maximum Settlement Amount.

3       Under the common fund doctrine, courts typically award attorney's fees based

4  on a percentage of the total settlement.  As the Ninth Circuit wrote in <u>Six (6) Mexican</u>

5  <u>Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990), "[a]lthough

6  statutory awards of attorneys fees are subject to 'lodestar' calculation procedures, a

7  reasonable fee under the common fund doctrine is calculated as a percentage of the

8  recovery."  Every U.S. Supreme Court case that has considered the award of

9  attorney's fees under the common fund doctrine has determined those fees as a

10 percentage of the recovery.  <u>See</u> <u>Camden I Condominium Ass'n, Inc. v. Dunkle</u>, 946

11 F.2d 768, 773 (11th Cir. 1991) <u>citing</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 900 n.16 (1984)

12 (percentage of recovery method is appropriate way to award attorney's fees in

13 common fund cases); <u>Sprague v. Ticonic Nat'l Bank</u>, 307 U.S. 161 (1939).

14      The Ninth Circuit has long considered a fee of 25% as the "benchmark" in

15 common fund cases.  <u>Six (6) Mexican Workers</u>, 904 F.2d at 1311; <u>Williams</u>, 129 F.3d

16 at 1027; <u>Paul, Johnson</u>, 886 F.2d at 272.  In fact, the Ninth Circuit benchmark of 25%

17 falls in the low to mid-range of fee awards made in class actions.  4 Conte & Newberg,

18 <u>Newberg on Class Actions</u>, § 14.6, at p. 550 (4th ed. 2007); <u>Van Vranken v. Atlantic</u>

19 <u>Richfield Co.</u>, 901 F.Supp. 294, 297 (N.D. Cal. 1995) (noting fee awards of 30-50%

20 are common in "smaller" settlements involving less than $10 million); <u>Shaw v.</u>

21 <u>Toshiba America Information Systems, Inc.</u>, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000)

22 ("Empirical studies show that, regardless whether the percentage method or the

23 lodestar method is used, fee awards in class actions average around one-third of the

24 recovery").  Accordingly, Plaintiff respectfully submits the requested attorney's fees

25 of $28,125.00, or exactly 25% of the Total Maximum Settlement Amount, represents

26 a reasonable fee in line with the Ninth Circuit benchmark.

27      Further, to ensure the fairness of an attorney's fee award, courts frequently

28 conduct a lodestar cross check of counsel's fees.  Courts may compare the fee

1    amount counsel seeks as a percentage with what their hourly bills would amount to

2    under the lodestar analysis.  <u>Vizcaino</u>, 290 F.3d at 1050-51 ("Calculation of the

3    lodestar, which measures the lawyers' investment of time in the litigation, provides

4    a check on the reasonableness of the percentage award.").

5          Here, through submission of this motion, Plaintiff's Counsel incurred a

6    reasonable lodestar of $84,950.00 based on 106.5 hours litigating this matter.

7    [Crosner Decl., ¶¶ 4-10; Exh. 2.]  Thus, Counsel's lodestar is actually larger than the

8    fees requested on a percentage basis, which further suggests the requested fee is

9    reasonable since the value of the services rendered is higher than the actual fee

10   request when those services are valued via traditional hourly billing.

11         In class action litigation, the prevailing view also is that litigation expenses

12   are awarded in addition to the award of attorney's fees.  <u>Van Vranken</u>, 901 F.Supp.

13   at 299 (awarding litigation expenses in addition to attorney's fees); <u>In re:</u>

14   <u>Businessland Sec. Litig.</u>, 1991 U.S. Dist. Lexis 8962, at *6 (N.D. Cal. June 18,

15   1991) (overruling objection that litigation expenses should be included in the

16   requested fee award).  With respect to the request for reimbursement of costs and

17   expenses, an attorney is entitled to "recover as part of the award of attorney's fees

18   those out-of-pocket expenses that would normally be charged to a fee paying client."

19   <u>Harris v. Marhoefer</u>, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  To support

20   an expense award, counsel should file an itemized list of expenses by category and

21   the total amount advanced for each category, allowing the Court to assess whether

22   the expenses are reasonable.  <u>Wren v. RGIS Inventory Specialists</u>, No. C-06-05778

23   JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011).

24         Here, the Settlement Agreement provides for reimbursement of $10,626.61

25   in expenses incurred in connection with this litigation.  As set forth in the

26   chart below, these expenses include the amounts paid for, *inter alia*, service

27   of process, mediation fees, filing fees, travel costs, and expert fees, all of

28   which are costs normally billed to and paid by the client.

| Expense Category | Amount |
|---|---|
| | |
| Mediation Fees | $6,400.00 |
| Court Filing Fees/ Service of Process/Attorney Service | $1,612.40 |
| Expert fees | $2,600.00 |
| Postage/Overnight/Fax | $36.65 |
| Photocopying | (waived) |
| Legal Research Charges | (waived) |
| | |
| **Total Costs and Expenses** | **$10,649.05** |

[Crosner Decl., ¶¶ 11-12.] These costs were reasonably incurred in the prosecution of this matter. Further, Class Counsel is waiving certain other costs frequently charged to paying clients, such as photocopying/facsimile charges, postage, and legal research charges. All of these costs are reasonable and were necessary in the prosecution of this case and, although the above final costs of $10,649.05 are slightly higher than the amount provided for in the Settlement Agreement, Plaintiff respectfully requests the Court approve payment of only $10,626.61 in litigation costs and expenses consistent with the terms of the settlement.

## VI.   **CONCLUSION**

For the foregoing reasons, the parties jointly request that the Court approve the proposed settlement in its entirety.

Dated: March 23, 2023                    **CROSNER LEGAL, P.C.**


By: _____

Zach Crosner
Chad Saunders
Attorneys for Plaintiff

NOTICE OF MOTION AND MOTION FOR APPROVAL
CASE NO. 2:20-cv-05418-VAP

1

## CERTIFICATION UNDER L. R. 11-6.1

The undersigned, counsel of record for Plaintiff Lori Johnson, certifies that this brief contains 5,084 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 23, 2023                          **CROSNER LEGAL, P.C.**


By:  _____
            Zach Crosner
            Chad Saunders
            Attorneys for Plaintiff