**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6

Lori Johnson,

        Plaintiff,

        v.

Insulet Corporation et al.,

        Defendants.

Case No. 2:20-cv-05418-VAP-KESx

**Order GRANTING Plaintiff's Motion for Approval of Fair Labor Standards Act Collective Action Settlement (Dkt. 43)**

On March 23, 2023, Named Plaintiff Lori Johnson ("Plaintiff"; "Named Plaintiff") filed a Motion for Approval of a Fair Labor Standards Act ("FLSA") Collective Action Settlement ("Motion"). (Mot., Doc. No. 43.) The Motion was unopposed. After considering all papers filed in support of the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Court GRANTS the Motion.

## I.    BACKGROUND

### A.  Procedural History

On March 30, 2020, Plaintiff filed a class and collective action complaint in Los Angeles Superior Court against Insulet Corporation ("Insulet"; "Defendant") asserting four claims for violations of the California Labor Code, one claim for violation of California Business and Professions Code § 17200, and one FLSA collective action claim for violation of 29 U.S.C. §§ 207, 255(a). (Compl., Doc. No. 1-2 at 6-11.) Plaintiff's Complaint

alleges, among other things, that Defendant willfully failed to include commission wages in the regular rate of pay for purposes of calculating premium overtime rates, resulting in Insulet underpaying her and other similarly situated employees for overtime work.  (*Id.* at 10; Mot. 8.)  Plaintiff removed the case to this Court on June 18, 2020.  (Doc. No. 1.)

On December 9, 2020, the parties engaged in private mediation before the Honorable Ronald Sabraw (Ret.).  (*See* Doc. No. 17.)  Though the mediation proved unsuccessful, the parties continued to negotiate and entered into a long-form settlement agreement ("Settlement Agreement," "Agreement," Doc No. 43-1 Ex. 1) on September 30, 2020.  (Doc. No. 39.)  Plaintiff now asks the Court to approve her proposed settlement, class notice (Doc. No. 43-1 Ex. B), and claim form (*id.* Ex. C), and issue an order dismissing this action with prejudice (*id.* Ex. D).  (Mot. 2.)

### B.  Settlement Terms

The Settlement Agreement defines an FLSA collective of persons "who worked for Defendant Insulet Corporation as non-exempt employees in any position, however titled, paid by commission, in whole or in part, at any time within" either three years before Plaintiff filed her Complaint or four years before that filing for California workers.  (Doc No. 43-1 Ex. 1, ¶ 1.6.)  This collective includes approximately 258 potential members as identified by a list of qualifying workers that Defendant assembled and provided to Plaintiff.  (Mot. 9; *see* Doc. No. 45-1.)

Unlike an opt-out class action settlement under Federal Rule of Civil Procedure 23, the Settlement Agreement here issues payments only to persons who opt in to the Agreement by properly completing and submitting a claim form.[1]  (Doc No. 43-1 Ex. 1, ¶¶ 1.6, 3.5; *see* Mot. 7.)  In exchange, these self-selected collective action members will receive their respective settlement allocation payments and release Insulet[2] from certain claims, and this action will be dismissed with prejudice.  (Doc No. 43-1 Ex. 1, ¶¶ 2.6, 3.5, 3.10, 4.1(a), Ex. C.)  The Settlement Agreement's release is not limited

---

[1] Plaintiff does not seek to proceed under Rule 23 in settlement of any of her claims.  (*See* Mot. 7.)  Instead, Plaintiff seeks approval of a Settlement Agreement for an FLSA collective action that covers both FLSA claims and state labor claims.

Though Plaintiff does not address this aspect of the Agreement, district courts in the Ninth Circuit have permitted plaintiffs to "prosecut[e] their pendent state claims as part of [an] FLSA class action.*" Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004) (certifying an FLSA collective action but refusing to certify state labor claims as a Rule 23 class action because prosecuting the state claims as a collective action was a "superior" alternative to the Rule 23 class action); *see also Villalobos v. Calandri Sonrise Farm LP*, No. 2:12-cv-02615-PSG-JEMx, 2015 WL 12777959, at *1, *4 (C.D. Cal. Dec. 4, 2015); *Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 1017 (N.D. Cal. 2010).  Thus, following the trend in this circuit, it is appropriate for the Settlement Agreement in this collective action to cover both the FLSA and pendent state labor claims.  The Settlement Agreement cannot, however, extinguish the rights of workers who do not opt in to the FLSA class.  *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[2] The Agreement also releases claims against Insulet's "predecessors, successors, present and former affiliates, parents, subsidiaries, insurers, officers, directors, agents, members, shareholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with [Insulet]."  (Doc No. 43-1 Ex. 1, ¶ 1.18; *id.* Ex. C, ¶ 6.)

United States District Court
Central District of California

to the FLSA claim asserted in Plaintiff's Complaint.  The Agreement instead settles "any and all claims, demands, and causes of action . . . (a) that were asserted or that could have been asserted in [Plaintiff's] Civil Action based on the facts alleged in the complaint; (b) for unpaid wages (including, but not limited to, claims for minimum wage and overtime compensation); and/or (c) for liquidated damages, interest, penalties, attorney's fees, expenses, costs, and any other relief otherwise available under the FLSA or any state, federal or local laws governing wages or the payment of wages." (*Id.* Ex. 1, ¶ 1.19.)  These claims include "claims asserted . . . pursuant to the Fair Labor Standards Act ("FLSA"), the California Business and Professions Code ([Cal.] Bus. & Prof. Code §§ 17200, et seq.), the California Labor Code (Cal. Labor Code §§ 1 194; 226.7; 201), and IWC Wage Orders."  (*Id.* ¶ 1.2.)

Defendant agrees to pay a Maximum Gross Settlement Amount of $112,500, of which $62,748.39 will comprise the Class Settlement Amount available for members who opt in to the settlement.  (*Id.* ¶¶ 1.20, 1.20(a).) Each participating collective action member's payment will be calculated proportionally based on each person's alleged overtime damages during the relevant time period, as determined by wage and hour evidence Plaintiff obtained during discovery.  (Mot. 11; Doc. No. 43-1 Ex. 1, ¶ 1.20(a), Ex. B at 2.)  Named Plaintiff will receive up to $5,000 in addition to her individual settlement allocation (Doc. No. 43-1 Ex. 1, ¶ 1.20(b)), and the third-party settlement administrator ("Settlement Administrator") will receive up to $6,000 (*id.* ¶ 1.20(e)).  The parties have also allocated $28,125 of the

Maximum Gross Settlement Amount to pay attorney fees and $10,626.61 for attorney expenses (*id.* ¶¶ 1.20(c), (d)).

Within fourteen days of this Court approving the Settlement Agreement, Defendant will provide the Settlement Administrator with a list of last-known names and mailing addresses for those named in Defendant's list of potential collective action members.  (*Id.* ¶ 3.2.)  Within fourteen days of the Settlement Administrator receiving this list, the Settlement Administrator will send via First-Class Mail a class notice and claim form to each potential collective action member.  (*Id.* ¶¶ 3.2-3.3; *see* Doc. No. 45 Ex. A.)  The Settlement Administrator will use the United States Post Office's National Change of Address Database to attempt to confirm recipient addresses prior to this mailing.  (Doc. No. 43-1 Ex. 1, ¶ 3.3.)  If a mailing is returned as undeliverable, the Settlement Administrator will perform one skip trace and resend the mailing if it obtains a more recent address.  (*Id.*)  If a more recent address is not obtained, the funds allocated to that potential collective action member will be reallocated to other members on a pro-rata basis.  (*Id.*)

To become a collective ac tion member, the Settlement Administrator must receive a potential member's completed claim form within sixty days from the date of the Settlement Administrator's first mailing.  (*Id.* ¶¶ 1.5, 3.5.)  Potential member may contact the Settlement Administrator during this time period to request that the class notice and claim form be remailed.  (*Id.* ¶ 3.4)  If a potential collective action member submits an incomplete or deficient claim form during this time period, the Settlement Administrator will return the deficient document explaining the deficiencies, and the potential

members will have fourteen days to correct and resubmit the document.  (*Id.* ¶ 3.6.)

As soon as practicable after the sixty-day submission period, the Settlement Administrator will certify to the parties a list of final collective settlement members, along with their calculated individual settlement allocations.  (*Id.* ¶ 3.7.)  Serving as Class Counsel, Plaintiff's counsel will file a final list of collective settlement members with the Court.  (*Id.* ¶ 3.8.)  After this filing and the expiration of the parties' and collective members' appeal rights, Defendant will remit to the Settlement Administrator the total sum needed to satisfy its settlement obligation.  (*Id.* ¶¶ 1.17, 3.9.)  Within fourteen days of Defendant remitting the sum, the Settlement Administrator will mail the final collective settlement members their respective allocation payments.  (*Id.* ¶ 3.10.)  Collective settlement members will have 180 days to process their checks.  (*Id.* ¶ 3.12.)  If any fail to do so, they still will be bound to the Agreement but be deemed to have waived irrevocably any right to their payment, and 100% of their unclaimed funds will be remitted to Legal Aid at Work, a non-profit providing legal services.  (*Id.*)  Within fourteen days of Defendant remitting its obligation, the Settlement Administrator will also provide attorney fees and expenses to Class Counsel.  (*Id.* ¶ 3.13.)

## II.    LEGAL STANDARD

The Supreme Court has "frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay" under the FLSA and has held that "FLSA rights cannot be abridged by

United States District Court
Central District of California

1  contract or otherwise waived," including by settlement.  *Barrentine v.*

2  *Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).  Claims under

3  the FLSA therefore "may only be waived or otherwise settled if settlement is

4  supervised by the Secretary of Labor or approved by a district court."  *Selk*

5  *v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal.

6  2016).  "[M]any courts have adopted a totality of circumstances approach

7  that emphasizes the context of the case and the unique importance of the

8  substantive labor rights involved."  *Id.* at 1173 (citing *Wolinsky v. Scholastic,*

9  *Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)).

10

11      Settling an FLSA collective action first requires the existence of an FLSA

12  collective action.[3]  The FLSA authorizes "any one or more employees for

13  and in behalf of himself or themselves and other employees similarly

14  situated" to sue an employer for unpaid minimum wages or unpaid overtime

15  compensation, provided that "[n]o employee shall be a party plaintiff to any

16  such action unless he gives his consent in writing to become such a party

17  and such consent is filed in the court in which such action is brought."  29

18  U.S.C. § 216(b).  In other words, in an FLSA collective action "each plaintiff

19  must opt <u>into</u> the suit," rather than out of it (as in a class action under

20  Federal Rule of Civil Procedure 23).  *McElmurry v. U.S. Bank Nat'l Ass'n*,

21  495 F.3d 1136, 1139 (9th Cir. 2007) (emphasis in original).

22

23

24

25      [3] The action prescribed by the FLSA is known commonly as a collective,
    rather than a class, action.  *Sarviss v. Gen. Dynamics Info. Tech. Inc.*, 663
26  F. Supp. 2d 883, 902 (C.D. Cal. 2009).

Whatever role a court plays in certifying an FLSA class, it is not bound to exercise the same oversight of the settlement of a collective action as it must a class action under Federal Rule of Civil Procedure 23(e).  Whereas the court's role in supervising the settlement of a class action "protects unnamed class members 'from unjust or unfair settlements affecting their rights,'" *Amchem Prods., Inc.*, 521 U.S. at 623 (quoting 7B Charles Alan Wright, et al., Federal Practice & Procedure § 1797 (3d ed.)), members of an FLSA collective action have opted in affirmatively; a court's involvement in the management of their action "has less to do with the due process rights" of those to be bound by a settlement, "and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion,'" *McElmurry*, 495 F.3d at 1139 (quoting *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989)).

A district court further must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute."  *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor, Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982).  "If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'"  *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 4:10-cv-05243-SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012) (quoting *Lynn's Food*, 679 F.2d at 1354).

United States District Court
Central District of California

# III.    DISCUSSION

## A.    Fair Labor Standards Act Class Certification

Plaintiff has not moved for certification of their FLSA collective.  (*See generally* Mot.)  "When the parties seek settlement approval of an FLSA collective action claim before seeking certification of a collective action, courts in this circuit first consider whether certification is appropriate and then whether the proposed settlement is substantively acceptable." *Kempen v. Matheson Tri-Gas, Inc.*, No. 4:15-cv-00660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016) (citing cases); *see Seto v. Cnty. of San Joaquin*, No. 2:20-cv-01788-KJM-CKDx, 2022 WL 3357504, at *1 (E.D. Cal. Aug. 14, 2022).  To maintain a collective action under the FLSA a plaintiff must demonstrate that the putative collective action members are similarly situated.  29 U.S.C. § 216(b); *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 535-36 (N.D. Cal. 2007); *Leuthold*, 224 F.R.D. at 466.

The Ninth Circuit recently defined "similarly situated" to mean that "party plaintiffs must be alike with regard to some material aspect of their litigation."  *Campbell v. City of L.A.*, 903 F.3d 1090, 1114 (9th Cir. 2018) (emphasis in original).  "That is, the FLSA requires similarity of the kind that 'allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.'"  *Id.* (citing *Hoffman-La Roche*, 493 U.S. at 170).  "That goal is only achieved—and, therefore, a collective can only be maintained—to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims."  *Id.*  "If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment."  *Id.*  This "requires

little more than substantial allegations . . . that the putative class members were together the victims of a single decision, policy, or plan." *Ortega v. Spearmint Rhino Cos. Worldwide, Inc.*, 5:17-cv-00206-JGB-KKx, 2019 WL 2871156, at *3 (C.D. Cal. May 15, 2019).

Here, the Settlement Agreement defines a collective of persons "who worked for Defendant Insulet Corporation as non-exempt employees in any position, however titled, paid by commission, in whole or in part, at any time within" either three years before Plaintiff filed her Complaint or four years before that filing for California workers.  (Doc No. 43-1 Ex. 1, ¶ 1.6.)  Plaintiff makes "substantial allegations that the[se] putative class members were subject to a single illegal policy, plan[,] or decision" as required for certification of an FLSA subclass, *see Leuthold*, 224 F.R.D. at 468, namely that Insulet failed to calculate properly the premium rate owed for their overtime work as non-exempt employees paid by commission, resulting in their underpayment for overtime work.  (Compl. ¶¶ 6, 13, 31, 35; *see* Mot. 8, 10, 12.)  Since the members of the FLSA collective were subject to the same policies concerning calculation of their overtime rate, the Court concludes that Plaintiff and the members of the collective membership are "similarly situated."  *See, e.g.*, *Fossett v. Brady Corp.*, No. 5:16-cv-02572-PA-SPx, 2020 WL 7063586, at *3 (C.D. Cal. Oct. 2, 2020); *Hightower v. JPMorgan Chase Bank, N.A.*, No. 2:11-cv-01802-PSG-PLAx, 2015 WL 12644569, at *5 (C.D. Cal. Feb. 3, 2015); *Gonzalez v. Universal Alloy Corp.*, No. 8:13-cv-00807-JVS-MRWx, 2014 WL 12771120, at *2 (C.D. Cal. Nov. 10, 2014).  The Court therefore conditionally certifies the FLSA collective only for purposes of approving the settlement.

10

**B.   Bona Fide Dispute**

   "A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability."  *Dashiell v. Cnty. of Riverside*, No. 5:15-cv-00211-JGB-SPx, 2018 WL 3629915, at *2 (C.D. Cal. July 19, 2018).  There must be "some doubt ... that the Plaintiffs would succeed on the merits through litigation of their [FLSA] claims."  *Selk*, 159 F. Supp. 3d at 1172.

   This case involves a bona fide dispute between the parties.  Plaintiff's Complaint alleges an FLSA claim for willful failure to incorporate commissions into workers' regular rate of pay for purposes of calculating owed overtime pay.  (Compl. 10-11.)  Defendant contests whether the Complaint's alleged time constitutes "hours worked," whether certain wages are owed, how to calculate the regular rate of pay, whether Defendant's alleged violation was willful for purposes of liquidated damages, and whether or not the FLSA's statute of limitations applies to bar Plaintiff's FLSA claim, among other issues.  (Answer, Doc. No. 1-4 at 2, 4, 5, 8; Mot. 12.)  *See, e.g.*, *Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKOx, 2018 WL 1305713, at *3 (E.D. Cal. Mar. 13, 2018) (citing three bona fide disputes: (1) how to calculate overtime compensation, (2) whether the defendant acted in good faith, and (3) applicability of the statute of limitations; stating that "[a]lthough defendants concede liability under the FLSA, they dispute whether the FLSA violation at issue in this case was willful").

United States District Court
Central District of California

## C. Fair and Reasonable Settlement Agreement

In determining whether an FLSA settlement is fair and reasonable, "many courts have adopted a totality of circumstances approach that emphasizes the context of the case and the unique importance of the substantive labor rights involved." *Selk*, 159 F. Supp. 3d at 1173 (citing *Wolinsky*, 900 F. Supp. 2d at 335). Courts often consider the plaintiff's range of possible recovery, the stage of proceedings and amount of discovery completed, the seriousness of the litigation risks faced by the parties, the scope of any release provision in the settlement agreement, the experience and views of counsel and the opinion of participating plaintiffs, and the possibility of fraud or collusion. *Dashiell*, 2018 WL 3629915, at *3 (citing *Selk*, 159 F. Supp. 3d at 1173).

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174. To assess whether a reasonable relationship exists "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Plaintiff's counsel represents it hired a consulting group to calculate unpaid overtime for a sample of 5 of the 258 potential collective action members in this matter. (Crosner Decl., Doc. No. 43-1, ¶ 3; Mot. 13.) Using the sample employees' payroll and time records, the consulting group calculated approximately $3,002 in net unpaid overtime for the five-person

12

United States District Court
Central District of California

sample over the FLSA's three-year period for willful violations.  Crosner Decl. ¶ 3; Doc. No. 17 at 2; *see* 29 U.S.C. § 255(a).  This figure extrapolates to $154,903 in unpaid overtime wages for the entire potential collective.  (Mot. 13.)  Since the FLSA provides liquidated damages for willful violations related to overtime pay, the collective could secure a maximum of $309,806 in recoverable damages.  (*Id.*)  If, however, Plaintiff were to fail to establish Defendant's willfulness, the collective's recovery would be limited to a two-year period, *see* 29 U.S.C. § 255(a), reducing the total potential recovery to approximately $103,000.  (*Id.*)

The Settlement Agreement allocates $62,748.39 to distribute to collective action members for unpaid overtime.  (Doc. No. 43-1 Ex. 1, ¶ 1.20(a).)  This figure constitutes between 20% to 40% of the collective's potential maximum recoverable damages, which is within the realm of recoveries that courts have found reasonable for purposes of settling collective wage-and-hour disputes.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage-and-hour class settlement fair where the settlement fund represented between approximately 9% and 27% of the total potential recovery); *Bautista v. Harvest Mgmt. Sub LLC*, No. 2:12-cv-10004-FMO-CWx, 2013 WL 12125768, at *14 (C.D. Cal. Oct. 16, 2013) (approving a gross fund value that was approximately 30% of the maximum possible recovery); *Glass v. UBS Fin. Servs., Inc.*, No. 3:06-cv-04068-MMCx, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (finding a range of 25% to 35% reasonable); *Selk*, 159 F. Supp. 3d at 1175 (collecting cases approving similar ranges); *see also In re Mego Fin. Corp. Sec. Litig.*,

213 F.3d 454, 459 (9th Cir. 2000) (""It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."" (quoting *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982)).  The settlement further "affords the putative [collective action] members a tangible monetary benefit," *Jones v. Agilysys, Inc.*, No. 4:12-cv-03516-SBAx, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014), which was otherwise no certainty given the significant litigation risks Plaintiff faced in proving Insulet's alleged improper overtime wage calculations and demonstrating that it willfully engaged in such conduct (*see* Mot. 15-16).  The Court thus finds the settlement to be in the range of reasonableness for wage and hour actions.

"The recommendations of plaintiffs' counsel should [also] be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979) (citations omitted); *see Saldivar v. Priority One Med. Transp., Inc.*, No. 2:09-cv-04789-MMM-CWx, 2011 WL 13213889, at *8 (C.D. Cal. Mar. 22, 2011) (applying *Boyd* to an FLSA action).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see Saldivar*, 2011 WL 13213889, at *8 (applying *In re Pacific Enterprises Securities Litigation* to an FLSA action).

Here, Plaintiff's counsel has extensive experience litigating wage and hour class actions (Crosner Decl. ¶¶ 5, 7-9) and has engaged in thorough

1   informal and formal discovery to investigate Plaintiff's claims (Mot. 8).  The

2   parties, both represented by competent counsel, further engaged in

3   mediation in front of retired Alameda County Superior Court Judge Ronald

4   Sabraw.  (Doc. No. 17.)  Though the mediation proved unsuccessful, it

5   spurred further negotiations wherein the parties agreed to a sampling

6   method for calculating potential damages and eventually entered the long-

7   form Settlement Agreement currently before the Court.  (Doc. No. 17, 39.)

8   Where the parties engage in mediation before a neutral third party who has

9   judicial experience, it "indicates the outcome is fair and adequate."  *Saldivar*,

10  2011 WL 13213889, at *9 (collecting cases).  Use of mediation in this matter

11  also assuages concerns of fraud and collusion, as it is evidence that the

12  parties were adversarial and negotiated at arm's length in reaching their

13  agreement.  *See Pike v. Cnty. of San Bernardino*, No. 5:17-cv-01680-JGB-

14  KKx, 2019 WL 8138439, at *5 (C.D. Cal. Nov. 25, 2019) (citing a mediation

15  that ultimately failed to produce a settlement as evidence of no fraud or

16  collusion).

17

18        Finally, the Settlement Agreement's releases are appropriate in

19  scope.  For those who opt in, the Agreement releases "any and all claims,

20  demands, and causes of action . . . that were asserted or that could have

21  been asserted in [Plaintiff's] Civil Action based on the facts alleged in the

22  complaint," including those related to payment of wages.  (Doc No. 43-1

23  Ex. 1, ¶ 1.19; *see id.* ¶ 4.1.)  Such language that "release[s] claims 'based

24  on the identical factual predicate as that underlying the claims in the settled

25  class action'" is permissible for purposes of settling FLSA collective actions.

26  *Pike*, 2019 WL 8138439, at *4 (citation omitted); *see Dudley v.*

*TrueCoverage LLC*, No. 2:18-cv-03760-PA-AGRx, 2019 WL 3099661, at *4 (C.D. Cal. Mar. 22, 2019); *In re City of Redondo Beach*, No. 2:17-cv-09097-ODW-SKx, 2021 WL 1010631, at *4 (C.D. Cal. Mar. 16, 2021).  The release also applies to only those persons who opt in to the Settlement Agreement, which is generally appropriate in the FLSA collective action context.  Doc No. 43-1 Ex. 1, ¶¶ 1.6, 4.1; *see La Parne v. Monex Deposit Co.*, No. 8:08-cv-00302-DOC-MLGx, 2010 WL 11519646, at *3 (C.D. Cal. Nov. 16, 2010) (limiting an FLSA collective action settlement release to only those members who affirmatively opt in).

The Settlement Agreement further limits Named Plaintiff from bringing any action of any kind that arose before the date of the Agreement and requires her to waive unknown claims that materially would have affected her settlement under California Civil Code section 1542 (Doc No. 43-1 Ex. 1, ¶¶ 41(b), (c)),[4] but these broader releases are permissible, especially where, as here, named plaintiff receives additional compensation as a result of settlement.  *See, e.g.*, *Gretler v. Kaiser Found. Health Plan, Inc.*, No. 5:18-cv-02175-AG-KKx, 2019 WL 8198308, at *3 (C.D. Cal. Mar. 18, 2019) (approving broader release of all unknown claims for named plaintiffs based on their additional compensation); *Anspach v. 68-444 Perez, Inc.*, No. 5:19-

---

[4] The Agreement specifies that Named Plaintiff does *not* release (1) any claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634; (2) any claim for unemployment compensation or workers' compensation benefits; (3) any rights or claims that cannot be released under the Agreement or this Court's approval order; (4) any right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission, or similar state agency; or (5) any rights or claims that arrive after the date of the Agreement.  (Doc No. 43-1 Ex. 1, ¶ 4.2(c).)

cv-2184-JGB-SPx, 2022 WL 2162820, at *5 (C.D. Cal. Apr. 21, 2022) (permitting general release and section 1542 waiver); *see also Alvarez v. 9021PHO Fashion Square LLC*, No. 2:15-cv-03657-SJO-VBKx, 2016 WL 11757836, at *5 (C.D. Cal. Jan. 19, 2016).

Considering the factors above, the Court finds the Settlement Agreement to be a fair and reasonable resolution of a collective FLSA dispute.

**D.   Class Notice and Claim Form**

Plaintiff seeks approval of her proposed class notice and claim form. (*See* Doc. No. 43-1 Exs. B, C.)

Plaintiff's proposed class notice identifies recipients as non-exempt employees paid by commission who worked for Insulet.  (*Id.* Ex. B at 1.)  It provides spaces to list the recipient's individual collective member allocation and the claim form submission deadline.  (*Id.*)  It also provides an accurate description of the nature of the lawsuit and how the Settlement Agreement was reached.  (*Id.* at 2.)  The form describes how the recipient's allocation was calculated and informs recipients in bolded font that they must submit a completed claim form by the submission deadline in order to receive their allocation.  (*Id.*)  Finally, the form directs recipients to the claim form regarding their rights and obligations and provides contact information for both the Settlement Administrator and Class Counsel.  (*Id.* at 2-3.)

United States District Court
Central District of California

United States District Court
Central District of California

1    Plaintiff's proposed claim form accurately describes the lawsuit and the

2  FLSA collective membership.  (*Id.* Ex. C at 1.)  It further secures the

3  recipient's consent to participate in the settlement agreement and details the

4  exact release of claims stated in the Settlement Agreement.  (*Id.* at 1-2; *see*

5  Doc. No. 43-1 Ex. 1, ¶ 4.1.)  It finally provides bolded instructions for proper

6  return of the claim form.  (Doc. No. 43-1 Ex. C at 2.)

7

8    The Court finds the settlement's proposed forms and notice procedures

9  reasonably designed to reach potential collective action members, to

10  provide them the opportunity to opt in to the Settlement Agreement, and to

11  inform them of their rights and obligations related to receiving their

12  allocation.  The class notice and claim form are therefore APPROVED.

13  Plaintiff is reminded to fill in the individual collective member allocation,

14  claim form submission deadline, and Settlement Administrator contact

15  information for each class notice and claim form mailed.

16

17  **E.   Incentive Award and Administrative Costs**

18    "At its discretion, a district court may award an incentive payment to the

19  named plaintiffs in a FLSA action to compensate them for work done on

20  behalf of the class."  *Selk*, 159 F. Supp. 3d at 1181 (citation omitted).  In

21  reviewing whether an incentive award is appropriate, the district court

22  should consider the actions the plaintiff has taken to protect the interests of

23  the class, the degree to which the class benefitted from such actions, and

24  the amount of time and effort the plaintiff expended in pursuing the litigation.

25  *See id.*  Courts will scrutinize large incentive payments "to ensure that the

26  prospect of a large incentive did not encourage a named plaintiff 'to accept a

18

suboptimal settlement at the expense of the class members whose interests they are appointed to guard.'"  *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)).

The Settlement Agreement provides Named Plaintiff with an incentive award of up to $5,000.  (Doc. No. 43-1 Ex. 1, ¶ 1.20(b).)  Though Plaintiff's Motion does not detail her actions or efforts in maintaining this lawsuit, Plaintiff nevertheless initiated the suit and likely provided helpful information to litigate the case.  Named plaintiffs in collective wage-and-hour litigation, moreover, often risk financial or reputational repercussions for bringing an action against their employer.  Courts in this circuit assessing settlements with similar or lesser gross values than present here also have found $5,000 to be a "reasonable amount" for a named plaintiff's incentive award. *Jennings v. Open Door Mktg., LLC*, No. 4:15-cv-04080-KAW, 2018 WL 4773057, at *3, *9 (N.D. Cal. Oct. 3, 2018) (finding a $5,000 award reasonable where the gross settlement value was a $125,000); *see Selk*, 159 F. Supp. 3d at 1181 (approving a $5,000 incentive award for a $50,000 gross settlement value); *Wonderly v. Youngblood*, No. 1:16-cv-01621-SKO, 2022 WL 378262, at *11 (E.D. Cal. Feb. 8, 2022) (finding $10,000 reasonable for a $130,000 gross settlement value).  A $5,000 award is also not overly disproportionate to the average $243.21 payment that claimants will receive if each of the 258 potential collective action members submits a valid claim form.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming a $5,000 incentive award where the average class payment was roughly $212)*; Bautista v. Harvest Mgmt. Sub LLC*, No. 2:12-cv-10004-FMO-CWx, 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16,

2013) (similar); *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 478, 483
(S.D. Cal. 2013) (similar).  The Court thus APPROVES the incentive award
proposed here.

The Settlement Agreement also provides for administrative costs not to
exceed $6,000, which is roughly 5.3% of the Maximum Gross Settlement
Amount.  (Doc. No. 43-1 Ex. 1, ¶ 1.20(e); *see id.* ¶ 1.20.)  The Agreement
states that Phoenix Settlement Administrators ("Phoenix") will be used as a
Settlement Administrator.  (*Id.* ¶ 1.11.)  Phoenix will be responsible for
confirming potential collective action member addresses, mailing class
notice and claim forms, processing undeliverable mailings and deficient
claim forms, responding to potential collective action member inquiries,
drafting a report listing the final collective action members and their
allocation payments, and issuing settlement allocation payments to the
collective action members.  (*Id.* ¶¶ 1.15, 3.3, 3.4, 3.6, 3.7, 3.10.)  The
proposed $6,000 limit on administrative costs appears to be within the range
of values permitted by courts in this Circuit.  *See, e.g.*, *Jones v. San Diego
Metro. Transit Sys.*, No. 3:14-cv-01778-KSC, 2017 WL 2819842, at *2 & n.1,
*7 (S.D. Cal. June 27, 2017) (approving a settlement with administrative
costs totaling roughly 10% of the gross settlement value); *Figueroa v.
Conner Logistics, Inc.*, No. 1:19-cv-01004-DAD-BAMx, 2021 WL 164870, at
*1 (E.D. Cal. Jan. 19, 2021), *report and recommendation adopted*, No. 1:19-
cv-01004-DAD-BAMx, 2021 WL 707725 (E.D. Cal. Feb. 23, 2021) (granting
approval where settlement administration costs were roughly 9% of the
gross settlement value); *see also McClure v. Waveland Servs., Inc.*, No.
2:18-CV-01726-KJM-ACx, 2021 WL 5204151, at *5 (E.D. Cal. Nov. 9, 2021)

1  (finding a 4.3% ratio reasonable).  The Court finds the proposed

2  administrative costs reasonable.

3

4      **F.    Attorney Fees and Costs**

5          Under the FLSA, courts "shall, in addition to any judgment awarded to

6  the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

7  defendant, and costs of the action."  29 U.S.C. § 216(b).  Under Ninth

8  Circuit precedent, a court may exercise discretion to award attorney fees

9  from a common fund by applying either the lodestar method or the

10  percentage-of-the-fund method.  *Fischel v. Equitable Life Assurance Soc'y*

11  *of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citing *Vizcaino v. Microsoft*

12  *Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). "Irrespective of the chosen

13  method, 'the district court should be guided by the fundamental principle

14  that fee awards out of common funds be 'reasonable under the

15  circumstances.'"  *Alberto v. GMRI. Inc.*, 252 F.R.D. 652, 667 (E.D. Cal.

16  2008) (citations omitted).  "In the Ninth Circuit, 25% is generally considered

17  the benchmark for determining whether attorney's fees are reasonable when

18  they are based on a percentage of the award."  *McKeen-Chaplin v.*

19  *Provident Sav. Bank, FSB*, No. 2:12-cv-03035-MCE-ACx, 2018 WL

20  3474472, at *2 (E.D. Cal. July 19, 2018) (collecting cases).  "The lodestar is

21  calculated by multiplying the number of hours counsel reasonably expended

22  on the litigation by [a] reasonable hourly rate for each attorney, considering

23  regional market rates and the attorney's experience and skill."  *Kelley v. City*

24  *of San Diego*, No. 19-CV-622-GPC-BGSx, 2021 WL 424290, at *10 (S.D.

25  Cal. Feb. 8, 2021).

26

United States District Court
Central District of California

Here, Plaintiff's counsel seeks $28,125 of the Maximum Gross Settlement Amount to pay attorney fees (Mot.10), which is precisely 25% of the Settlement Agreement's Maximum Gross Settlement Amount of $112,500.  Counsel also represents that this proposed fee total is demonstrably lower than the $84,950 that would be awarded under the lodestar method.  (Mot. 21.)  Plaintiff's counsel has provided a time report, which states that attorneys Blake R. Jones, Zachary Crosner, Michael Crosner, and Chad Saunders collectively devoted 106.5 hours to this matter. (Doc. No. 43-1 Ex. 2.)  The time report lists the hourly rate for each attorney as $850, $750, $900, and $750, respectively.  (*Id.*)  Even if these rates were halved,[5] the award Plaintiff's counsel seeks still would be only a fraction of the calculated lodestar.  Since counsel's request meets the Ninth Circuit benchmark and constitutes only a small portion of the fees counsel potentially could obtain via the lodestar method, the attorney fees set forth in the proposed Settlement Agreement are fair and reasonable.  *See, e.g.*, *Goodwin v. Citywide Home Loans, Inc.*, No. 8:14-cv-00866-JLS-JCGx, 2015 WL 12868143, at *4 (C.D. Cal. Nov. 2, 2015).

---

[5] Plaintiff's counsel attests to the significant experience of Zachary Crosner, Michael Crosner, and Chad Saunders in handling collective wage-and-hour actions (Crosner Decl. ¶¶ 3-6), which suggests that these rates, indeed, may be reasonable.  At any rate, the Court need not determine whether counsel's specific hourly rates are reasonable, as only a rough lodestar calculation is necessary to support the Court's ruling based on the percentage-of-the-fund method.  *See*, *e.g.*, *Bato v. Lab'y Corp. of Am. Holdings*, No. 2:09-cv-04671-MMM-Ex, 2011 WL 13412376, at *15 (C.D. Cal. Mar. 14, 2011) ("[A] *rough* calculation of the lodestar [may be used] as a cross-check to assess the reasonableness of the percentage award." (emphasis added) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

Finally, costs may be awarded as part of an FLSA settlement.  *Selk*, 159 F. Supp. 3d at 1180–81.  Here, Plaintiff's counsel requests $10,649.05 in costs.  (Mot. 22.)  These costs involve mediation fees, filing and service of process fees, and expert fees.  (*Id.*)  Much of the costs went to funding the parties' mediation before Judge Sabraw, which spurred the settlement in this case.  (*Id.*)  The Court finds these costs reasonable.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Approval of Fair Labor Standards Act Collective Action Settlement.  The case is DISMISSED with prejudice.

The Court shall retain jurisdiction over the parties, and over the Settlement Agreement, for all purposes, including but not limited to (i) monitor and enforce compliance with the Settlement Agreement, Final Approval and/or any related order of this Court; and/or (ii) resolve any disputes over this Settlement Agreement or the administration of the benefits of this Settlement Agreement, including disputes over entitlement to payments sought by Settlement Counsel.  The Court retains jurisdiction regardless of dismissal.

**IT IS SO ORDERED.**

Dated:    5/9/23

_____
Virginia A. Phillips
Senior United States District Judge

United States District Court
Central District of California

23